USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/29/2026_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS URBANO,

                Petitioner,

      -against-

KENNETH GENALO, New York Field Office
Director, Immigration and Customs Enforcement
and Removal Operations (ICE/ERO); TODD
LYONS, Acting Director, U.S. Immigration and
Customs Enforcement; KRISTI NOEM,
Secretary, Department of Homeland Security,

                Respondents.

26 Civ. 1466 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Petitioner, Carlos Urbano, a Venezuelan citizen, petitions for a writ of habeas corpus

under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and

Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1. Urbano

contends that his Fifth Amendment right to due process was violated when he was detained on

February 20, 2026, after attending a hearing in a New York City immigration court. *See id.*

¶¶ 2–3, 26, 30. Urbano seeks immediate release from custody or a bond hearing. *Id.* at 9. For

the reasons stated below, the Petition is granted.

## BACKGROUND

On October 8, 2022, Urbano entered the United States at or near Paso Del Norte, Texas,

and encountered United States Customs and Border Protection ("CBP") officers. Gov't Ltr.

¶ c(a), ECF No. 6; De La Cruz Decl. I ¶ 3, ECF No 7. On that same day, CBP officers

apprehended, processed, and released Urbano on parole, which was set to expire on December 9,

2022. De La Cruz Decl. I ¶ 5; Form I-213 at 2, ECF No. 6-1; Form I-94 (Record of

Deportable/Inadmissible Alien) at 2, ECF No. 6-2.

On December 13, 2024, Urbano reported to ICE at 26 Federal Plaza in New York for the first time after being paroled, and was served with a Notice to Appear ("NTA"). De La Cruz Decl. I ¶ 6; NTA, ECF No. 6-3. The NTA charged Urbano as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i); he was then released on his own recognizance and ordered to appear before an immigration judge at 26 Federal Plaza on February 20, 2026, pursuant to an Order of Release (the "2024 Order of Release"). Decl. ¶ 6; NTA at 1; 2024 Order of Release, ECF No. 6-4. The 2024 Order of Release requires Urbano to comply with the following conditions:

> You must report for any hearing or interview as directed by Immigration and Customs Enforcement or the Executive Office for Immigration Review.
>
> You must surrender for removal from the United States if so ordered.
>
> You must report . . . to [a] Duty officer . . . as directed. . . .
>
> You must not change your place of residence without first securing written permission from the officer listed above.
>
> You must not violate any local, State or Federal laws or ordinances.
>
> You must assist Immigration and Customs Enforcement in obtaining any necessary travel documents.

2024 Order of Release. It also states that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by Immigration and Customs Enforcement." *Id.*

According to a sworn declaration from Acting Supervisory Detention and Deportation Officer Raudo De La Cruz, on the morning of Urbano's February 20 hearing, ICE conducted a "background check," which allegedly revealed his "extensive criminal history" and a detainer that ICE had lodged for Urbano on April 22, 2025, but that was not honored. Gov't Ltr. ¶ c(a); De La Cruz Decl. I ¶¶ 1, 8-10. The government states that the background check revealed: (1) an October 8, 2024 arrest for Criminal Trespass in the Second Degree, for entering a school

2

as a sex offender in violation of New York Penal Law ("NYPL") § 140.15(2); (2) an October 16, 2024 arrest for Criminal Trespass in the Third Degree, in violation of NYPL § 140.10(a); and (3) an April 22, 2025 arrest for Assault in the Third Degree, in violation of NYPL § 120.00(1). *See* Record of Arrests and Prosecutions ("RAP") Sheet at 3–4, ECF No. 6-5.; De La Cruz Decl. I ¶¶ 8-9.

Thereafter, ICE obtained and issued a Form I-200 arrest warrant (the "Warrant"). Warrant, ECF No. 6-7. In the afternoon, after Urbano's immigration hearing, ICE arrested him. Pet. ¶ 2. As he was processed, ICE served him with the Warrant, which stated that the basis of Urbano's arrest was "the pendency of ongoing removal proceedings against" him. De La Cruz Decl. I ¶¶ 11-12; Warrant. That same day, he was transferred to Orange County Jail, and he filed this petition. De La Cruz Decl. I ¶ 14; *see generally* Pet. Urbano has been physically present in the United States continuously since 2023. *See* Pet. ¶ 2.

By letter dated March 18, 2026, the government informed the Court that criminal records involving all three of Urbano's arrests "were expunged and sealed," and "[b]ased on a record check of" Urbano's FBI number, "there was no criminal arrest record found." De La Cruz Decl. II ¶¶ 4–5, ECF No. 16. The government stated that "Petitioner's current RAP sheet shows no crimes" and submitted an updated RAP sheet for Urbano from the Department of Homeland Security ("DHS") dated March 5, 2026, showing no criminal history. Gov't Ltr. II, ECF No. 15; Updated DHS RAP Sheet, ECF No. 15-1.

At a hearing this Court held on March 25, 2026, the government presented Officer Marc Vera, the ICE officer who arrested Urbano. *See* ECF No. 18; 28 U.S.C. § 2243. The Court credits Vera's testimony. Vera stated that he "d[id]n't recall much" from the day of the arrest. Hr'g Tr. at 5:7. Nor could Vera identify Urbano as the person he arrested on February 20. *Id.*

3

at 14–21.  He testified about the general practices he has employed for executing arrests outside of immigration courtrooms during his six-month tenure with DHS.  *Id.* at 4:19–21; 6:6–10; *see also id.* at 6:15–18 (testifying that as of February 20, 2026, he had made three arrests).  At the start of his day, Vera typically receives a packet of information containing a noncitizen's name, address, phone numbers, and any applications that have been filed in their immigration proceedings.  *Id.* at 9:4–9.  The packet also includes a Form I-200 arrest warrant.  *Id.* at 7:24–8:2. To confirm that the information in the packet is correct, Vera cross-references the packet with information available on databases called "EARM" and "ACRIMe".  *Id.* at 8:14–24; 11:22–24. Vera "wouldn't know [about] the preparation of the packet," and he "only receive[s] it from [his] supervisor."  *Id.* at 26:9–15.  Vera testified that he neither makes the decision about whom to arrest, nor is involved in the decisionmaking process.  He merely executes the arrest based on the information packet.  *Id.* at 17:17–18:4.  In this case, the Warrant was signed by Officer Gilda Fasce Asddo, whom the government did not present as a witness.[1]  *See* Warrant.

### DISCUSSION

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted).  "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review."  *Id.*  In analyzing Urbano's due

---

[1] At the hearing, the government claimed that, "given the short time frame," it was "not able to speak" with Asddo, she was "not []available," and they were not "able to bring her" to the hearing. Hr'g Tr. at 45:3–12.  The Court notes, however, that its order setting the hearing directed the government to appear with the ICE officers "involved in arresting and detaining" Urbano, ECF No. 18, and that the habeas statute at issue in this case commands courts in most cases to hold a hearing, if necessary, within "five days" of the government's reply to an order to show cause, 8 U.S.C. § 2243.  The government knew that the Court ordered it to produce Asddo at the hearing, knew well in advance that the Court would consider this petition on a short time frame, and filed no letter or adjournment request prior to the hearing.

process claim, the Court holds that (1) Urbano is not subject to detention under 8 U.S.C. § 1225(b)(2)(A); and (2) because his detention is governed by § 1226(a), and he was released on his own recognizance subject to conditions under the 2024 Order of Release, his due process rights were violated when ICE detained him without first making an individualized determination as to whether he violated the terms of the 2024 Order of Release.

## I.      Basis of Detention

The government seeks to justify Urbano's detention under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention of certain noncitizens, but "acknowledges that the Court's decisions in *Gonzalez* [*v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025),] and more recently in *Galvez Galvez* [*v. Francis*, No. 26 Civ. 161 (AT), 2026 WL 84493 (Jan. 12, 2026)], would control resolution of th[e] legal issue" regarding whether Urbano is detained subject to § 1226 or § 1225(b)(2)(A).  Gov't Ltr. ¶¶ a(a), c(a), d(a) & n.1; Opp. Mem. at 2, 10-13.[2]  "This Court need not spill much ink on the issue, as it agrees with the overwhelming weight of authority" and concludes that Urbano is detained under 8 U.S.C. § 1226(a).  *Cardenas v. Almodovar*, No. 25 Civ. 9169, 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025).

For the same reasons explained in this Court's decision in *Galvez Galvez* and *Lantiguez Alvarado v. Bondi*, No. 26 Civ. 768, 2026 WL 381810 (S.D.N.Y. Feb. 11, 2026), 8 U.S.C. § 1226 governs the detention proceedings here, where the petitioner, Urbano, has been physically present in the United States since 2023.  *See* Pet. ¶ 2; *Galvez Galvez*, 2026 WL 84493, at *2.

First, as in *Gonzalez*, it is undisputed that when Urbano was released on his own recognizance in 2024, the government did so under § 1226, not § 1225.  *See* 2025 WL 2961626,

---

[2] In opposition to the Petition, the government incorporates by reference the arguments it made in *Gonzalez*.  *See* Gov't Ltr. ¶ d(a) n.3.  In this order, the Court refers to the opposition brief filed at ECF No. 18 in *Gonzalez* as Opp. Mem.

at *4.  The 2024 Order of Release states that Urbano's release is "[i]n accordance with section 236 of the Immigration and Nationality Act," which has been codified at 8 U.S.C. § 1226.  2024 Order of Release at 1; *see also* Pet. ¶¶ 22, 27.  Likewise, the Warrant authorized Urbano's arrest pursuant to INA Section 236.  *See* Warrant.  The government does not argue that any exception under § 1226(c) applies.  *See generally* Gov't Ltr. I; Gov't Ltr. II.  Therefore, Urbano's detention was discretionary under § 1226(a).  *See Galvez Galvez*, 2026 WL 84493, at *2.  In other words, the government's "own exhibits unequivocally establish that [Urbano] was detained pursuant to [its] discretionary authority under § 1226(a)."  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025).

Second, as the Court detailed in *Galvez Galvez*, dozens of courts have recognized that the "statutory text" of § 1225(b)(2)(A), the "statutory structure" of §§ 1225 and 1226, a "recent amendment" to § 1226, and the government's "longstanding practice," all confirm that § 1226(a) applies to Urbano, who has been residing in the United States since 2023.  *Galvez Galvez*, 2026 WL 84493, at *2; Pet. ¶ 7; *see also Cuy Comes v. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491, at 2–3 & n.4 (S.D.N.Y. Nov. 14, 2025); *Rodriguez v. Bostock*, No. 25 Civ. 5240, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases); *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (stating that § 1226(a) would apply to the removal of noncitizens who are "already in the country pending the outcome of removal proceedings"); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060 (7th Cir. 2025) (finding persuasive that "any noncitizen who is unlawfully already in the United States" is not covered by § 1225(b)(2)(A)).

Finally, as the Court recognized in *Lantiguez Alvarado v. Bondi*, No. 26 Civ. 768, 2026 WL 381810, at *2–5 (S.D.N.Y. Feb. 11, 2026), some courts in this District have held that noncitizens like Urbano are subject to mandatory detention under § 1225(b)(2)(A).  However, for

6

the same reasons stated in *Lantiguez Alvarado*, the Court is not persuaded that Urbano is subject to mandatory detention because, as stated above, he has been residing in the United States since 2023. *Id.* Therefore, Urbano is subject to discretionary detention pursuant to Section 1226(a).

II.      Due Process Required for 1226(a) Detention

"At the outset, the Court rejects [any] assertion that [Urbano] is not entitled to due process under the Fifth Amendment and is instead limited only to the process provided by Congress." *Cuy Come*s, 2025 WL 3206491, at *4. Urbano is not, as the government argues, an "alien on the threshold of initial entry," Opp. Mem. at 11 (citation omitted), but rather a noncitizen who was released on his own recognizance and has been living in the country since 2023 during the pendency of his immigration proceedings, Pet. ¶ 2. *See Gonzalez*, 2025 WL 2961626, at *4. As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation omitted); *Velasco Lopez*, 978 F.3d at 850.

At the March 25 hearing, the government stated that it redetained Urbano because his "criminal history" violated the conditions in the 2024 Order of Release. *See* Hr'g Tr. at 47:3–9 ("[T]hese arrests that have been occurring at the courthouse are based on someone's having a criminal history and thus violating their order of recognizance."); *id.* at 23:22–24:4 (Vera testifying that he understands the basis of arrests in his general practice is that the noncitizens "have criminal charges under the [RAP] sheet that [he] receive[s], violating the conditions that they agreed to when they entered"); *see also* 2024 Order of Release. The government argues that if Vera applied his general practices for conducting arrests to Urbano, his supervisor would have made "an individualized determination" as to Urbano's criminal history, and Vera would have carried out that determination in making the arrest. *See* Hr'g Tr. at 46:21–47:2. The government

does not, however, identify a specific condition of the 2024 Order of Release that Urbano violated. *See generally* Gov't Ltr. I; Gov't Ltr. II; Hr'g Tr.

To assess the adequacy of due process in the context of civil immigration enforcement, the Court applies the *Mathews v. Eldridge* balancing test. *See Lopez Benitez*, 795 F. Supp. 3d at 492. This test requires the Court to determine: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the [g]overnment's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* The Court assesses these factors mindful of the fact that Urbano is detained pursuant to § 1226(a), not § 1225(b)(2)(A).

A. Private Interest

First, the private interest implicated in this case is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). "The liberty interest in freedom from detention 'is even more sharply pronounced where an individual was released from detention on the condition that he comply with certain conditions (as petitioner was here), the individual in fact complies with those requirements (as petitioner did here), and the individual thus relied on the government's implicit promise that his release will be revoked only if he fails to live up to those conditions.'" *Minarcaja Concha v. Lyons*, No. 25 Civ. 6695, 2026 WL 215417, at *15 (E.D.N.Y. Jan. 28, 2026) (quoting *Y-C- v. Genalo*, No. 25 Civ. 6558, 2025 WL 3653496, at *6 (E.D.N.Y. Dec. 17, 2025)).

As in *Minarcaja Concha*, before ICE arrested Urbano at 26 Federal Plaza, he had been released on his own recognizance since December 2024, and had appeared for his routine ICE immigration hearing as directed by immigration authorities. *See* NTA at 1; 2024 Order of

8

Release.  Since February 20, Urbano has been held in Orange County Jail and deprived of his liberty.  De La Cruz Decl. I ¶ 14.  This demonstrates that ICE's continued detention of Urbano infringes on his "weighty private interest in personal liberty." *Minarcaja Concha*, 2026 WL 215417, at \*16.

B. Risk of Erroneous Deprivation

Second, given the procedures used to detain Urbano, the circumstances here present a high risk of erroneous deprivation because the government did not provide him with adequate notice of the basis for his redetention or an opportunity to be heard.

With respect to notice, the government neither specifies which condition of the 2024 Order of Release that Urbano violated, nor has it provided any evidence that it communicated to Urbano that he was being arrested and detained because of any such violation.  *See generally* Gov't Ltr. I; Gov't Ltr. II; Hr'g Tr.  Even if the government sought to redetain Urbano on the basis of his arrests, the arrests do not constitute a violation of the 2024 Order of Release's condition that he "not violate any local, State or Federal laws or ordinances," because an arrest is not tantamount to a conviction.  Moreover, there is no evidence that the individual who decided that Vera should arrest Urbano made a determination that the arrests constituted a violation of the law.  *See Minarcaja Concha*, 2026 WL 215417, at \*17.  Here, the government concedes that all three of Urbano's arrests were expunged and sealed and that he has "no crimes" on his record. Gov't Ltr. II.  Additionally, two of Urbano's arrests occurred in October 2024, before his release on recognizance in December that same year.  *See* RAP Sheet at 7.

In *Minarcaja Concha*, the Court similarly rejected the government's argument that a petitioner's New York arrests provided him with notice where the government "fail[ed] to show that [the petitioner] violated any condition of his [release on recognizance], much less the

9

requirement to not violate any local, state, or federal law" and "[t]he record show[ed] that one of the two arrests of [the petitioner] . . . resulted in a dismissal of all charges and that the other arrest ha[d] not resulted in any reported disposition, much less a conviction." 2026 WL 215417, at *17.

Second, with respect to an opportunity to be heard, the government has not adduced any evidence that it provided Urbano with an opportunity to be heard before a DHS officer or an immigration judge before detaining him on February 20. *See, e.g.*, Gov't Ltr. II (stating that as of March 18, 2026, Urbano has not had a bond hearing before an immigration judge).

Therefore, the procedures used to detain Urbano, which included no notice or opportunity to be heard concerning "any change in circumstances" since his December 2024 release on recognizance, establish a high risk of erroneous deprivation of his protected liberty interest to be free from detention. *Rodríguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 318 (E.D.N.Y. 2025).

### C. Government's Interest

Third, the government has not addressed any of the *Mathews* factors, and much less, it has not propounded any argument that its interests are advanced by ICE's detention of Urbano without notice or an opportunity to be heard. The exercise of government discretion "is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at a future immigration proceedings and preventing danger to the community." *Velasco Lopez*, 978 F.3d at 854. Here, there is no valid exercise of discretion where there is no evidence that he violated any condition of the 2024 Order of Release, or that the government exercised any "discretion *at all* in detaining [Urbano] . . . in contravention of the basic procedural

requirements of § 1226(a)." *Cuy Comes*, 2025 WL 3206491, at *5 (S.D.N.Y. Nov. 14, 2025) (quoting *Lopez Benitez*, 795 F. Supp. 3d at 494–95).

**CONCLUSION**

For the reasons stated above, as also set forth in *Minarcaja Concha*, 2026 WL 215417, at *15–18, *Y-C-*, 2025 WL 3653496 at *5–8; *Rodríguez-Acurio*, 811 F. Supp. 3d at 318, among other cases, the Court concludes that Urbano's detention was unconstitutional from the start. Accordingly, the only appropriate remedy is immediate release. *See* Pet. ¶ 3; *Minarcaja Concha*, 2026 WL 215417, at *18–19.

The Petition is, therefore, GRANTED, and Respondents are ORDERED to immediately release Urbano from government custody. The government shall ensure that any of Urbano's personal belongings in government custody are returned to him following his release.

In addition, by **March 31, 2026**, the government must brief its authority, if any consistent with this Order, to (1) redetain Urbano without a valid exercise of discretion; (2) deny bond to Urbano in any subsequent proceeding on the ground that he must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) absent a change in relevant circumstances; (3) invoke the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) in the event that Urbano is granted bond; or (4) impose additional conditions of release or burdens on Urbano's liberty.

If, instead, Respondents confirm that they will take none of those steps with respect to Urbano without prior notice of at least one week provided to him and the Court, Respondents need not file such briefing. *See Quispe-Sulcaray v. Noem*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025).

11

By **March 30, 2026, at 6:00 p.m.**, Respondents shall file a letter on the docket certifying

compliance with this Order.

SO ORDERED.

Dated: March 29, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge